UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SABRINA L. COOPER,

    Plaintiff,

v.                                                      CASE NO. 3:16-cv-1560-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff originally claimed that she became disabled on October 1, 2011, but amended her onset date to May 7, 2012. (Tr. 17, 51, 102-03.) The administrative law judge ("ALJ") held a hearing on September 19, 2013 (Tr. 100-59), and subsequently issued a decision on February 28, 2014, finding Plaintiff not disabled. (Tr. 173-83.)

On January 21, 2015, the Appeals Council ("AC") entered an order remanding the case back to the ALJ to conduct further proceedings. (Tr. 190-92.) Specifically, the AC found that the ALJ failed to identify or discuss the medical opinions rendered by Cathy Whitley, M.D., an examining physician. (Tr.

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 8, 10.)

190.)  The AC noted that an ALJ cannot ignore medical opinions and noted that Dr. Whitley's opinions, if accepted, may preclude the performance of Plaintiff's past relevant work.  (*Id*.)  Moreover, the AC found that the ALJ erred in failing to evaluate Plaintiff's obesity in the decision.  (Tr. 191.)  Upon remand, the AC directed the ALJ to, *inter alia*, "[e]valuate [Plaintiff's] obesity and its effects in combination with [Plaintiff's] other physical impairments, pursuant to Social Security Ruling 02-01p," and to "evaluate the consultative opinion by Dr. Whitley, pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence." (*Id*.)  The AC reminded the ALJ that he could "request that Dr. Whitley provide additional evidence and/or further clarification of the opinion."  (*Id*. (internal citation omitted).)

The ALJ did not request any further information from Dr. Whitley on remand.  Instead, the ALJ obtained a written report dated March 9, 2015 from consultative physician Timothy McCormick, DO, MPJH.  (Tr. 1421-27.)  The ALJ also conducted a second hearing on June 18, 2015.  (Tr. 39-97.)  The ALJ rendered a second decision on July 14, 2015, finding Plaintiff not disabled from May 7, 2012, the alleged onset date, through the date of the decision.[2]

---

[2] Plaintiff had to establish disability on or before December 31, 2017, her date last insured, in order to be entitled to a period of disability and DIB.

Plaintiff is appealing the Commissioner's decision that she was not disabled from May 7, 2012 through July 14, 2015. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED AND REMANDED**.

I.   **Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues two general points on appeal. First, Plaintiff argues that the ALJ failed to properly evaluate the record medical evidence. More specifically, Plaintiff argues that the ALJ failed to properly consider Plaintiff's cardiovascular impairments, failed to properly evaluate the opinions of Drs. Whitley and McCormick, and failed to properly describe Plaintiff's status in the hypothetical presented to the vocational expert ("VE"). Second, Plaintiff contends that the ALJ failed to properly consider her credibility. Plaintiff specifically asserts that the ALJ erred in discounting her testimony regarding cardiovascular impairments, depression and anxiety, back impairments, and obesity. The Commissioner argues that the ALJ's evaluation at step four of the decision is clearly articulated and supported by substantial evidence.

### A. The ALJ's Decision

The ALJ found that Plaintiff had the following severe impairments: "obesity; congenital heart disease; history of mechanical mitral valve replacement (MVR); hypertension; history of transient ischemic attack (TIA); history of chronic back

4

pain; and history of asthma." (Tr. 20 (internal citation omitted).) The ALJ then found that Plaintiff did not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21.) At step four[3], the ALJ found, in relevant part, that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) with limitations. [Plaintiff] can lift/carry up to 10 pounds frequently, 20 pounds occasionally; she can sit for two hours at a time, stand for 30 minutes at a time, and walk for 30 minutes at a time; she can sit for five hours total in an eight-hour workday and stand or walk for two hours total in an eight-hour workday; the [Plaintiff] can frequently use her bilateral upper extremities for reaching (overhead and in all directions), handling, fingering, feeling, and pushing/pulling; she is limited to no more than occasional postural activities (i.e., climbing, balancing, stooping, squatting, crouching, crawling, or kneeling); she must avoid unprotected heights; no more than frequent exposure to moving mechanical parts, operation of a motor vehicle, humidity, wetness, pulmonary irritants, extreme temperatures, and vibrations; and she is limited to moderate (office) noise level.

(Tr. 22.) In making this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of th[e] symptoms are not entirely credible for the reasons explained in th[e] decision." (Tr. 27.) The ALJ then determined that

---

[3] A five-step sequential evaluation process has been established by the Social Security Administration in the Social Security Act, which is used to determine whether an individual is disabled or not (20 C.F.R. § 404.1520(a)).

5

Plaintiff was able to perform her past relevant work as a companion sitter, customer service clerk, cashier, and telemarketer. (Tr. 30.) As such, the ALJ found that Plaintiff was not disabled during the relevant period. (*Id.*)

### B. Analysis

Plaintiff argues that the ALJ erred in failing to clearly articulate reasons supported by substantial evidence for discrediting Plaintiff's testimony. The undersigned agrees.

The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her "pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain," pursuant to 20 C.F.R. § 404.1529, "all evidence about the intensity, persistence, and functionally limiting effects of

6

pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; *see also* SSR 96-7p (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").

When a claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.[4] The

---

[4] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors
(continued...)

7

> determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.*

"[C]redibility determinations are the province of the ALJ," *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court," *Foote*, 67 F.3d at 1562.

Here, the ALJ's reasons for discounting Plaintiff's credibility are not supported by substantial evidence. More specifically, the ALJ picked and chose from select portions of the record what he believed supported his credibility finding while ignoring certain probative evidence supporting Plaintiff's credibility.

The first flaw in the ALJ's credibility assessment was his statement that Plaintiff had been noncompliant with her prescribed medical treatment without analyzing Plaintiff's financial situation. *See, e.g., Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("We agree with every circuit that has considered the issue that poverty excuses noncompliance.") (citations omitted). The record is replete with references to Plaintiff's inability to pay for medical treatment;

---

⁴(...continued)
concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p.

8

however, the ALJ did not discuss those records in discounting her credibility based on noncompliance. (Tr. 138 ("Q. Now there have been times that you've gone without taking the Warfarin. A. Yes. Q. Why was that? A. I am ashamed to say, but I'm sorry as well, but yes, I did not have insurance at times. And I just learned about those four dollar prescription medication now."), 547 ("The patient did not have insurance, and therefore, did not purchase her Coumadin."), 559 ("She has not been in compliance with her medication because of insurance reasons."), 563 ("The patient did not have insurance, and therefore, did not purchase her Coumadin."), 662 ("She presently has no primary care physician since she no longer has insurance."), 682 ("The patient apparently at age 37, which is about 3 years prior to admission had quit taking Coumadin secondary to noncompliance as well as patient is uninsured."), 686 (same), 691 ("She has been noncompliant with her Coumadin. She states that due to financial reasons, she has not been on Coumadin for possibly 3 years."), 699 ("She previously was on Coumadin chronically until she stopped it for financial reasons 3 years ago."), 756 (noting inadequate coagulation due to financial reasons).) Even the records from Dr. Amalia Gozum, cited by the ALJ in support of his statement of noncompliance, acknowledge Plaintiff's financial constraints. (Tr. 686 ("The patient apparently at age 37, which is about 3 years prior to admission had quit taking Coumadin secondary to noncompliance *as well as patient is uninsured*.") (emphasis added).)

9

Moreover, the ALJ's statement that "the record fails to convey objective lab data or positive clinical findings to suggest her impairments reach a level of severity to support a finding of 'disabled' under the Regulations," while vague, is simply not true. (Tr. 23.) As the ALJ recognized, Plaintiff testified that her major limitations result from frequent shortness of breath ("SOB"), dizziness with exertion during activities, frequent chest pains, chronic fatigue, and weakness. (Tr. 27; 72-75; 119-29; 415-18.) The record conveys that Plaintiff "had a [prosthetic heart valve] placed in the mitral position when she was two years of age because of *intractable congestive heart failure*." (Tr. 529 (emphasis added).) The record also shows that when Plaintiff was younger she was "instructed to limit her degree of activities to mild physical exertion. Should she experience symptoms, she should stop all activities and rest." (Tr. 530.) In 1974, Plaintiff was diagnosed with a Class IV heart condition from congestive heart failure. (Tr. 531.) A Class IV heart condition is defined by the New York Heart Association as "resulting in an inability to carry on any physical activity without discomfort. . . If any physical activity is undertaken, discomfort is increased." (Tr. 522-24.) In 2003, Dr. Majdi Aschi, a cardiologist, noted that Plaintiff's "mitral valve has a mean gradient corresponding to *severe* prosthetic stenosis." (Tr. 559 (emphasis added).) Dr. Aschi noted that her "symptoms suggest that she needs replacement" and recommended "at least a functional capacity [evaluation], a regular exercise stress test and . . . [a] mitral valve replacement." (*Id*.) Although

10

these records support Plaintiff's testimony, the ALJ failed to mention any of these records in the discussion.

Indeed, a March 11, 2013 Stress Echo Report indicated poor exercise tolerance with respect to Plaintiff's aerobic capacity. (Tr. 927.) Also, on January 22, 2013, Plaintiff's treating physicians classified her impairment in severity as a Class III heart condition. (Tr. 1076, 1447.) A Class III heart condition is defined by the New York Heart Association as "resulting in marked limitation of physical activity . . . Less than ordinary physical activity causes fatigue, palpitation, dyspnea, or anginal pain." (Tr. 522-24.) The ALJ failed to explain why he rejected this probative evidence supporting Plaintiff's credibility.[5] *See Meek v. Astrue*, No. 3:08-cv-317-J-HTS, 2008 WL 4328227, at *1 (M.D. Fla. Sept. 17, 2008) ("Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . . Rather, the judge must explain why significant probative evidence has been rejected.") (internal citations and quotation marks omitted); *Lord v. Apfel*, 114 F. Supp. 2d 3, 13 (D.N.H. 2000) (stating that although the Commissioner is not required to refer to every piece of evidence in his decision, the Commissioner may not ignore relevant evidence, particularly when it supports the claimant's position).

---

[5] Although the ALJ accorded "no weight" to Dr. Peterson's conclusion that Plaintiff was disabled pursuant to the Jacksonville Public Housing authority's definition of disability (Tr. 29), he ignored Plaintiff's treating physicians' classification of Plaintiff's heart condition as a Class III condition (Tr. 1076, 1447).

Instead, the ALJ relied, in significant part, on the "largely benign medical findings" of consultative physician Dr. McCormick to discredit Plaintiff's testimony. (Tr. 23-24.) However, Dr. McCormick was admittedly not provided with certain relevant cardiovascular records. (Tr. 1426 ("There were no records from Dr. Aschi (cardiology).").) Dr. McCormick cautioned that Dr. Aschi's records should be considered in assessing Plaintiff's limitations (Tr. 1426 ("If available, they should be reviewed.")), and noted that he "would be interested in understanding what [Plaintiff] reports as a 'no work' status from Dr. Aschi."[6] (*Id*.)

The ALJ also stated that physical therapy notes from 2011 and 2013 showed "improvements in [Plaintiff's] overall condition subsequent to [physical therapy] course of treatment." (Tr. 25.) However, in doing so, the ALJ merely referenced physical therapy records discussing Plaintiff's overall *pain* level. (*Id*.) The ALJ failed to reference physical therapy records assessing Plaintiff's dizziness, fatigue and SOB complaints. For example, a physical therapy evaluation report dated April 22, 2013, indicates that Plaintiff could only walk 300 feet. (Tr. 845.) The evaluation report also indicates that Plaintiff failed to complete the "6 Minute Walk Test" as a result of "SOB upon exertion." (*Id*.) The assessment portion of the report noted "[a]mbulation deficits, [b]alance deficits,

---

[6] Interestingly, Dr. McCormick's report is consistent with Plaintiff's testimony to the extent that he observed Plaintiff as "very dyspneic when [he] first entered the exam room to obtain her history," and, upon returning to the examination room after tending to another patient matter, "look[ing] like she was close to falling asleep." (Tr. 1423.)

12

[o]ther: [t]oleration of exertion." (*Id.*)  Other physical therapy notes in the record indicate similar deficits.  (Tr. 1095 (noting "[c]oordination/[p]roprioception deficits"), 1099 (noting ambulation and coordination/proprioception deficits), 1105 (same), 1178 (noting that Plaintiff "stopped session due to fatigue"), 1180 (noting that Plaintiff "did not complete her session secondary to reporting feeling dizzy").)

The ALJ also cited evidence of Plaintiff's recovery from emergency room visits to discredit her testimony.  While noting the record contained "numerous" emergency room visits with "similar" complaints concerning chest pain, SOB, dizziness, back pain and/or weakness, the ALJ found that during each emergency room visit, Plaintiff's complaints were "promptly resolved or considerably mitigated with appropriate treatment or compliance."  (Tr. 24.)  While it is true that the record indicates that Plaintiff's fatigue, SOB, and dizziness complaints improved with observation, rest, and treatment in the hospital (*see, e.g.,* Tr. 964-67 (diagnosing Plaintiff with asthma and dyspnea, noting "[t]he [r]elieving factor[] is rest," and discharging her after she was observed "breathing so much better"), 1146-51 (noting that Plaintiff "does have SOB on exertion," and discharging her after observing her overnight and performing a normal echo examination)), such indication does not contradict Plaintiff's testimony that she becomes "very easily fatigued" upon exertion and "requires frequent rest breaks to sit or lie down." (Tr. 27).

Similarly, although Plaintiff engages in activities such as climbing stairs "so

13

long as she is able to take rest breaks and hold onto a railing," and performing *light* household chores (Tr. 27), this does not discredit her testimony with respect to her fatigue, dizziness, and SOB complaints. *See, e.g., Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability . . .").

Finally, the ALJ's error is compounded by his failure to comply with the AC's Remand Order. Although the AC directed the ALJ to "[e]valuate [Plaintiff's] obesity and its effects in combination with [Plaintiff's] other physical impairments, pursuant to Social Security Ruling 02-01p" (Tr. 191), the ALJ failed to adequately do so here. At step two in the analysis, the ALJ determined that obesity was a severe impairment. (Tr. 20.) At step three in the analysis, the ALJ found that Plaintiff's impairments, considered singly and in combination, do not meet or medically equal the criteria of a listed impairment. (Tr. 21.) However, at step four, the ALJ failed to reference his consideration of SSR 02-01p, or otherwise discuss what effect obesity has upon Plaintiff's ability to perform activities within the work environment. *See, e.g., Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (holding that an ALJ is "required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation").

The AC also directed the ALJ to "evaluate the consultative opinion by Dr.

14

Whitley, pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence." (Tr. 191.) The ALJ failed to clearly articulate the weight given to Dr. Whitley's opinions. Here, without further discussion, the ALJ vaguely refuted Dr. Whitley's medical source statement as "overly broad and unsupported by the objective medical evidence as the opinions appear largely predicated on the claimant's subjective complaints," but yet afforded "limited weight" to Dr. Whitley's opinion "to the extent it is consistent with the objective findings of record." Without more, the undersigned cannot conclude that the ALJ properly evaluated Dr. Whitley's opinions. *See Owens v. Heckler*, 748 F.2d 731, 735 (11th Cir. 1981) (holding that when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," the court will decline to affirm "simply because some rationale might have supported the ALJ's conclusion").

Overall, the ALJ's reasons for discrediting Plaintiff's testimony are not supported by substantial evidence. This issue is dispositive and, therefore, it is unnecessary for the Court to address Plaintiff's remaining arguments. *See, e.g., Alexander v. Comm'r of Soc. Sec.*, No. 8:13-cv-1602-T-GJK, 2014 WL 4211311, at *3 n.3 (M.D. Fla. Aug. 26, 2014) (citing *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that on remand the ALJ must reassess the entire record)).

Accordingly, it is hereby **ORDERED**:

1. The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** to the Commissioner, with instructions for the ALJ to consider all evidence in the record, articulate a sufficiently clear credibility finding as to the testimony and statements of Plaintiff, and conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order, and close the file.

3. Plaintiff's counsel is advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-124-Orl-22 (*In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2))*. This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on March 16, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record